IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LINEAGE POWER CORP.,

                    Plaintiff

          v.

SYNQOR, INC., and
VICTORY SALES, INC.,

                    Defendants.

REPORT AND
RECOMMENDATION[1]

08-cv-397-slc

---

## REPORT

In this patent lawsuit, plaintiff Lineage Power Corporation alleges that defendants are infringing four of Lineage's patents involving electrical and magnetic boards, devices, modules and methods.  Before the court for report and recommendation are defendants' motion to dismiss the complaint against defendant Victory Sales Inc. for failure to state a claim and motion to transfer the rest of this case to the Eastern District of Texas, Marshall Division.  *See* dkt. 16.

I am recommending that this court deny the motion to dismiss the claims against Victory Sales because the complaint alleges sufficient facts that plausibly suggest plaintiff is entitled to relief against defendant Victory Sales, Inc.

I am recommending that this court grant defendants' motion to transfer this case to the Eastern District of Texas.  Lineage and SynQor already have two patent lawsuits pending against each other in that district, both assigned to the same set of judges.  While the parties were negotiating settlement last summer, Lineage slipped up to Madison, Wisconsin to file the instant lawsuit, which it chose not to serve on the defendants–or even to mention–until prodded by this court.  If either SynQor or Lineage had filed its first lawsuit in Madison, then this court would have been more amenable to keeping the instant case.  But Lineage and SynQor each chose to

---

[1] Because the parties declined magistrate judge jurisdiction and no Article III Judge has yet agreed to take this case, I am submitting a report and recommendation to Chief Judge Barbara Crabb.

initiate related patent lawsuits against the other in the Eastern District of Texas. Efficiency and common sense militate toward adding this third lawsuit to that set.

From the seconded amended complaint and the documents submitted by the parties in connection with the transfer motion, I accept the following facts solely for the purpose of deciding this motion:[2]

ALLEGATIONS OF FACT

Plaintiff Lineage Power Corp. is a Nevada corporation with its principal place of business in Mesquite, Texas. Lineage is a power conversion systems manufacturer whose products include AC-to-DC and DC-to-DC power converters. It asserts four patents in this suit: U.S. Patent Nos. 6,005,773 (the '773 patent), 5,036,452 (the '452 patent), 6,310,301 (the '301 patent) and 6,138,344 (the '344 patent).

Defendant SynQor, Inc., is a Delaware corporation with its principal place of business in Boxborough, Massachusetts, near Boston. Defendant SynQor's products include DC-to-DC converters and AC-to-DC converters, all of which are manufactured in Boxborough. SynQor maintains a research and development center in Garland, Texas, where many of the accused products were designed in part. Defendant Victory Sales, Inc., an Ohio Corporation, is a manufacturer's representative for SynQor. Victory Sales markets and promotes the sale of SynQor products and its sales region includes all of Wisconsin and a significant portion of the upper Midwest.

---

[2] When deciding a transfer motion, a court may receive and weigh affidavits submitted by the parties. *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293-94 (7th Cir. 1989).

According to Google Maps, Mesquite and Garland are suburbs of Dallas within spitting distance of each other: Lineage's facility is only 10 miles from SynQor's.  Both facilities are less than 20 miles from the federal courthouse in Dallas, seat of the U.S. District Court for the Northern District of Texas.  Even so, Lineage and SynQor's first two patent lawsuits against each other currently are raging about 150 miles east, in Marshall, a division of the United States District Court for the Eastern District of Texas, a patent lawsuit magnet like this court.

SynQor initiated the first of this trilogy of lawsuits in November, 2007, suing Lineage and eleven other defendants in the Eastern District of Texas for patent infringement of three of SynQor's patents in November 2007.  That case is scheduled for trial in December 2010.  On March 5, 2008, Lineage filed its own lawsuit suit against defendant SynQor in the Eastern District of Texas on two different patents, U.S. Patent Nos.  RE36,571 (the 'RE571 patent) and 6,191,964 (the '964 patent).  Lineage did not name any of SynQor's distributors or manufacturing representatives as defendants in that lawsuit.  This case is expected to go to trial in July of  2011.  The same district judge and magistrate judge are presiding over both of the Lineage/Synqor lawsuits in the Eastern District of Texas.

During the summer of 2008, the parties began negotiating settlement of the two Texas lawsuits. On July 10, 2008, Lineage filed the instant lawsuit against SynQor in this court, naming as co-defendants Victory Sales, Inc. and Avnet, Inc. (although Avnet since has been dropped from this lawsuit).

Lineage did not immediately serve its new complaint on any defendant, even though the lawyers apparently continued to negotiate settlement of the first two cases in Texas.  After two months, on September 11, 2008, this court sent Lineage's attorney a fish-or-cut-bait letter

3

scolding Lineage and directing it forthwith to serve its complaint on defendants. Five days later, Lineage filed an amended complaint, which it served on SynQor on September 22, 2008. The court continued to rowel the parties to keep the case moving. *See* September 25 & 26 text only orders, dkts. 10 and 11.

The disclosures and claims of at least one patent in this case, the '773 patent, overlap with the disclosures and claims of one patent, 'RE571 patent, in Lineage's Texas case. One of the named inventors of the '773 patent is also one of the named inventors in the two patents in Lineage's Texas case. SynQor products accused of infringement in Lineage's Texas case are accused also in this case. Witnesses with knowledge of the technology or manufacturing decisions in this case are located mostly in Massachusetts and Texas, with a few witnesses in California and Pennsylvania.

Lineage and defendant SynQor are competitors who offer their products to the same customers, in the same markets and compete head-to-head for the same business opportunities. That said, SynQor has made no sales in this district since 2003; the few products sold prior to that date were not baseplated, none had active current sharing circuitry, and SynQor did not have automated manufacturing equipment that could assemble magnetic components. Victory Sales had not made any sales of the accused products in the Western District of Wisconsin.

ANALYSIS

## I. Victory Sales' Motion to Dismiss

A claim should be dismissed under 12(b)(6) when the allegations in the complaint, however true, could not raise a claim of entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 127

4

S.Ct. 1955, 1966 (2007).  A court must construe all of plaintiff's factual allegations as true and draw all reasonable inferences in plaintiff's favor.  *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006).  Rule 8 requires a plaintiff to give the defendant notice of its claims so that the defendant can prepare a defense.  *Ricoh Co., Ltd. v. Asustek Computer, Inc.*, 481 F. Supp. 2d 954, 959 (W.D. Wis. 2007).  A complaint attacked under Rule 12(b)(6) can survive in the absence of detailed factual allegations, but the plaintiff must allege facts sufficient plausible to suggest that plaintiff is entitled to relief and that discovery will reveal evidence supporting plaintiff's claim.  *Bell Atlantic*, 127 S.Ct. at 1965.

Victory Sales argues that Lineage's complaint alleges that it is merely a manufacturer's representative and that "as a matter of law, the activities of manufacturers' representatives do not constitute making, using, offering for sale or selling for purposes of infringement." *See* dkt. 17, at 18, citing *Ardco Inc. v. Page, Ricker, Felson Marketing, Inc.*, 25 U.S.P.Q.2d 1382, 1384 (N.D. Ill. 1992).  *Ardco* is inapposite for two reasons.  First, the language on which defendants rely is not as far-reaching as they imply.  "The law in this circuit 'makes it clear that a manufacturer's sales representative's solicitation of orders does not constitute *the sale or use of infringing devices*.'" *Id.* (citing *Kirsch Co. V. Edgecraft Corp. I* 193 U.S. P.Q. 25 (N.D. Ill. 1976))(emphasis added). One key phrase is missing in *Ardco*: "offer to sell."

Lineage alleges that Victory Sales (as well as SynQor) engaged in patent infringement by making, using, importing, offering to sell, or selling its patented inventions in violation of 35 U.S.C. § 271(a).  In 1994, Congress amended 35 U.S.C. § 271(a) to include the phrase "offer to sell" to section 271(a) in order "to prevent . . . generating interest in a potential infringing product to the commercial detriment of the rightful patentee." *MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1376 (Fed. Cir. 2005) (citing *3D Systems,*

*Inc. v. Aarotech Laboratories, Inc.*, 160 F.3d 1373, 1379 (Fed. Cir. 1998)).   In light of the amendment to § 271(a), *Ardco*'s holding that a manufacturer's representative's activities do not constitute infringing activity is no longer good law.

Victory Sales argues that it does not make, use or sell any of the infringing products, but fails to address whether it imports or offers to sell the accused products.   However, defendants' brief in support of transfer includes the sales agreement between SynQor and Victory Sales, which states:

> [Victory Sales] hereby agrees, during the term of this Agreement:
>
> (a) to actively and with its best efforts promote the sale of the [SynQor] Products;
>
> * * *
>
> (c) to solicit orders for [SynQor] products on behalf of and in the name of SynQor, utilizing only such forms, terms, conditions and prices provided or approved in advance by SynQor;
>
> ***
>
> (g) to maintain sufficient qualified sales personnel to achieve the maximum potential number of sales of [SynQor] Products in the Territory

Dkt. 19, at 4-5, ¶ VI.

Based on this agreement, Victory Sales' promotes and solicits sales of SynQor products. This activity could be sufficient to constitute an "offer to sell" products that infringed the patents in suit.   *See 3D Systems, Inc.*, 160 F.3d at 1379 (concluding that solicitations could "be regarded as 'offer[s] to sell' under section 271 based on the substance conveyed in the [solicitation], *i.e.*, a description of the allegedly infringing merchandise and the price at which it can be purchased.").   Therefore, the allegations in Lineage's complaint against defendant

Victory Sales plausibly suggest that Lineage is entitled to relief.  Therefore, defendants' motion for dismissal of the claims against Victory Sales should be denied.

## II. Motion to Transfer

A motion to transfer requires the court to determine whether the transferee district is one in which the action could have been brought and whether the convenience of parties, witnesses and the interests of justice favor transfer.  28 U.S.C. § 1404(a); *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986).  The moving party bears the burden of establishing that the transferee forum, in this case the Eastern District of Texas, is "clearly more convenient."  *Coffey*, 796 F.2d at 219-20.

The parties do not dispute that personal jurisdiction exists over Lineage and SynQor  in the Eastern District of Texas, and Victory has consented to personal jurisdiction in the Eastern District.  As a result, venue also would be proper in that district.  28 U.S.C. § 1391; *Hoffman v. Blaski*, 363 U.S. 335, 244 (1960); *Encyclopedia Britannica, Inc. v. Magellan Navigation, Inc.*, 512 F. Supp. 2d 1169, 1172 (W.D. Wis. 2007).  Additionally, there is no dispute that subject matter jurisdiction is present in the Eastern District of Texas as this is a patent suit brought under 28 U.S.C. § 1338(a).  Therefore, the Eastern District of Texas is a district in which this case could have been brought.

Next the court must consider the convenience of the parties and witnesses, and the interests of justice, 28 U.S.C. 1404(a); *Coffey*, 796 F.2d at 219-20.  In assessing the convenience of the parties and witnesses, factors to consider include the plaintiff's choice of forum, the situs of material events and ease of access to sources of proof.  *Harley-Davidson, Inc. v. Columbia Tristar Home Video*, 851 F.Supp. 1265, 1269 (E.D. Wis. 1994); *Kinney v. Anchorlock Corp.*, 736 F.Supp.

7

818, 829 (N.D. Ill. 1990).   The interest of justice inquiry focuses on "the efficient administration of the court system," such as whether a transfer would help the litigants receive a speedier trial or facilitate consolidation of related cases.   *Coffey*, 796 F.2d at 221.   Here, transfer achieves the second goal but not the first; under the totality of circumstances,  the most efficient administration of the court system clearly would be to transfer this case to the court in which the two principal litigants already are locked in similar patent litigation.   Lineage likely would get a speedier trial in this district in this lawsuit, but its claimed need for speed evanesces when weighed against the other factors.

Generally, a plaintiff's choice of forum is entitled to deference only when it is litigating in its home forum.   Because the Western District of Wisconsin is not Lineage's home forum, Lineage's choice of forum is not entitled to the same degree of deference.   *Chicago, Rock Island & Pacific Railroad Co. v. Igoe.*, 220 F.2d 299, 304 (7th Cir. 1955).   As is clear from both parties' initial decision to bypass the propinquitous (but slow) federal court in Dallas in favor of the speedier but more remote federal court in Marshall, convenience clearly is of secondary importance to both sides.   To the extent that the convenience factors even are relevant here, they favor transfer. For instance, the situs of material events is a lot closer to Marshall than  Madison. SynQor claims that since 2003 it has made no sales of its products in the Western District and only minimal sales in the Eastern District.

Picking up this thread, SynQor recently submitted a copy of the Federal Circuit's December 29, 2008 opinion in *In Re TS Tech USA Corp.,* Misc. Docket No. 888, in which the court remonstrated the Eastern District of Texas for declining to transfer jurisdiction of a lawsuit when there was no meaningful connection between the venue and the case.   *See* dkt. 45, Exh. 1.  But, as Lineage points out in response, the Federal Circuit was applying Fifth Circuit law and

time-to-trial was a neutral factor, whereas Seventh Circuit law allows this court to deny transfer based on likely delays in the other district. *See* dkt. 46. It has become commonplace for patent holders with no connection to this district to file lawsuits here because we are so fast, and, *ceteris paribus*, this court tends to keep these cases rather than pass them along to another court. Nothing in *In Re TS Tech* persuades me that this practice is an abuse of discretion under Seventh Circuit law. That said, this court is not so Procrustean in its fondness for speed that it will keep every patent lawsuit filed here regardless of the circumstances. The fact that this case has no discernible connection to this district–or to this state–militates toward transfer.

Another traditional convenience consideration is access to proof; this has become a non-issue in the age of 128GB flash drives. *See Milwaukee Electric Tool Corp. v. Black & Decker (N.A.) Inc.,* 392 F. Supp. 2d 1062, 1064 (W.D. Wis. 2005)("technological advancements have diminished traditional concerns related to ease of access to sources of proof. . . ").

As for witnesses, the parties' contretemps over travel time and subpoena power are red herrings. The court does not doubt either side's ability to persuade its important witnesses to appear for deposition and/or trial wherever they are needed, and the differences in portal-to-portal time and money costs for the witnesses are inconsequential when measured against the enormous total cost of patent lawsuits like these. To state the obvious, Texas witnesses will find it easier to travel to Marshall than to Madison, while the Massachusetts witnesses will be inconvenienced wherever this case lands.

However, consolidation of this case with the Marshall lawsuits provides genuine opportunities measurably to streamline discovery. To the extent that this third-filed lawsuit can plug into the discovery process currently occurring in the Texas lawsuits, it is possible to save some witnesses time and money by consolidating their depositions, affidavits and other

evidentiary input, whereas such economies would be elusive or nonexistent if witnesses were in play both in Marshall and Madison.

This segues into examination of the interests of justice. There is a concrete overlap between the technology and the patents in this case and the Texas cases. As SynQor observes, because the court in Marshall already is obliged to learn power converter technology, that court incurs only a small marginal cost to use that knowledge to preside simultaneously over a third case between the same principals over the same technology. Additional efficiencies are available if the Eastern District of Texas were to consolidate discovery and motion practice in this case with the first two. It's also possible to speed this case to trial by combining it with the related case already underway in Texas. The parties disagree as to how likely this is, but, if Lineage is genuinely interested in speedy resolution, then the court likely would give favorable consideration to a joint motion and a stipulated schedule.

This segues to the need for speedy resolution. Lineage does not deny that it chose the Western District because of its speed to trial. (SynQor attributes a more vexatious motive to Lineage, but I will be charitable). As noted above, this is a legitimate consideration. *Parsons v. Chesapeake & Ohio Ry. Co.*, 375 U.S. 71, 73 (1963) ("The relative speed with which an action may be resolved is an important consideration when selecting a venue."). In patent cases, swift resolution can be particularly important because delay might frustrate a patent holder's rights and the value of its patent. *Milwaukee Electric Tool Corp.*, 392 F. Supp 2d. at 1065 (W.D. Wis. 2005). But in this case, the operative patents in this lawsuit were issued between 1991 - 2001 and Lineage is asserting them against products that SynQor claims have been on the market for almost a decade. After tolerating years of alleged infringement by SynQor, Lineage is in no position to claim that a quick decision is critical to its rights.

10

Then there's the fact that Lineage sat on its complaint for two months after filing the lawsuit. Actually, we don't know how long Lineage would have waited if this court hadn't finally directed immediate service. Lineage's various tactical considerations underlying its decision are too nuanced to persuade a court as linear as this one. A company that claims to want quick resolution of its patent lawsuit in this court demonstrates its sincerity by serving its complaint promptly. *See, e.g., Snyder v. Revlon, Inc.*, 06-c-394-c, 2007 WL 791865, *9 (W.D. Wis. Mar. 12, 2007) ("plaintiff is hard pressed to show that the speed of this court's docket is a singularly sufficient reason for retaining the lawsuit" when plaintiff did not serve defendant until four months after filing complaint).

Similarly, this court understands Lineage's explanation why it filed its first lawsuit against SynQor in the Eastern District of Texas, but this does not establish that now it is in the interests of justice for this court to assert jurisdiction over Lineage's second, related lawsuit against SynQor. If Lineage was so concerned about a delay of 17 to 26 months between a trial date in Madison and what it expects to receive from the court in Marshall, then Lineage should have filed its first lawsuit here, period. Lineage's freedom to file where it chooses now is constrained by the parties' previous filing choices. In sum, *la société s'engluée:* there is no exit from Marshall.[3]

---

[3] Although it would be a stretch for Lineage to conclude from this that *l'enfer, c'est les autres procès.*

11

RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1)(B) and for the reasons stated above, I recommend that this court:

(1) Deny defendant Victory Sales, Inc.'s motion to dismiss the claims against it; and

(2) Grant defendants' motion to transfer this case to the United States District Court for the Eastern District of Texas, Marshall Division.

Entered this 7th day of January, 2009.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN
120 N. Henry Street, Rm. 540
Post Office Box 591
Madison, Wisconsin  53701

Chambers of                                                                                  Telephone
STEPHEN L. CROCKER                                                                (608) 264-5153
U.S. Magistrate Judge

January 7, 2009

All Counsel

      Re:___Lineage Power Corp. v. SynQor, Inc., et al.
           Case No. 08-c-397-slc

Dear Counsel:

      The attached Report and Recommendation has been filed with the court by the United States Magistrate Judge.

      The court will delay consideration of the Report in order to give the parties an opportunity to comment on the magistrate judge's recommendations.

      In accordance with the provisions set forth in the memorandum of the Clerk of Court for this district which is also enclosed, objections to any portion of the report may be raised by either party on or before January 20, 2009, by filing a memorandum with the court with a copy to opposing counsel.

      If no memorandum is received by January 20, 2009, the court will proceed to consider the magistrate judge's Report and Recommendation.

      Sincerely,

      /s/

      Connie A. Korth
      Secretary to Magistrate Judge Crocker

Enclosures
cc:    Honorable Barbara B. Crabb, District Judge

13

MEMORANDUM REGARDING REPORTS AND RECOMMENDATIONS

Pursuant to 28 U.S.C. § 636(b), the district judges of this court have designated the full-time magistrate judge to submit to them proposed findings of fact and recommendations for disposition by the district judges of motions seeking:

(1) injunctive relief;
(2) judgment on the pleadings;
(3) summary judgment;
(4) to dismiss or quash an indictment or information;
(5) to suppress evidence in a criminal case;
(6) to dismiss or to permit maintenance of a class action;
(7) to dismiss for failure to state a claim upon which relief can be granted;
(8) to dismiss actions involuntarily; and
(9) applications for post-trial relief made by individuals convicted of
    criminal offenses.

Pursuant to § 636(b)(1)(B) and (C), the magistrate judge will conduct any necessary hearings and will file and serve a report and recommendation setting forth his proposed findings of fact and recommended disposition of each motion.

Any party may object to the magistrate judge's findings of fact and recommended disposition by filing and serving written objections not later than the date specified by the court in the report and recommendation. Any written objection must identify specifically all proposed findings of fact and all proposed conclusions of law to which the party objects and must set forth with particularity the bases for these objections. An objecting party shall serve and file a copy of the transcript of those portions of any evidentiary hearing relevant to the proposed findings or conclusions to which that party is objection. Upon a party's showing of good cause, the district judge or magistrate judge may extend the deadline for filing and serving objections.

After the time to object has passed, the clerk of court shall transmit to the district judge the magistrate judge's report and recommendation along with any objections to it.

The district judge shall review de novo those portions of the report and recommendation to which a party objects. The district judge, in his or her discretion, may review portions of the report and recommendation to which there is no objection. The district judge may accept, reject or modify, in whole or in part, the magistrate judge's proposed findings and conclusions. The district judge, in his or her discretion, may conduct a hearing, receive additional evidence, recall witnesses, recommit the matter to the magistrate judge, or make a determination based on the record developed before the magistrate judge.

**NOTE WELL: A party's failure to file timely, specific objections to the magistrate's proposed findings of fact and conclusions of law constitutes waiver of that party's right to appeal to the United States Court of Appeals.** *See United States v. Hall,* **462 F.3d 684, 688 (7th Cir. 2006).**